IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB B.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____

Civ. No. 3:22-cv-895-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits (DIB) and supplemental security income (SSI). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    On March 12, 2019, Plaintiff filed an application for DIB and an application for SSI. Tr. 27.[2] In both applications, Plaintiff alleged disability beginning January 1, 2015. Tr. 27. After a hearing, the administrative law judge (ALJ) determined Plaintiff has not been under a disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner found at ECF 8.

1 – OPINION AND ORDER

within the meaning of the Social Security Act from January 1, 2015, through the date of his decision. Tr. 36.

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. A court can only "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Mata v. Kijakazi*, No. 22-35482, 2023 WL 3836421, at *1 (9th Cir. June 6, 2023)(*quoting Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)); *see also* 42 U.S.C. § 405(g).

"Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (*quoting Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (*citing Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "[T]he reviewing court 'may not substitute its judgment for that of the Commissioner.'" *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) *(quoting Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined that Plaintiff had the following severe impairments: a history of traumatic brain injury (TBI); a history of seizure disorder; neurocognitive disorder; anxiety; and depression. Tr. 30. The ALJ further determined that Plaintiff had the RFC to perform light work with limitations: frequently balancing, kneeling, stooping, crouching, or crawling; occasionally climbing ramps and stairs; never climbing ropes, ladders, or scaffolds; needing to avoid exposure to unprotected heights, moving machinery, and similar hazards; and performing simple, repetitive, routine tasks with no contact with the public. Tr. 33. Based on this RFC and the testimony of a vocational expert (VE), the ALJ found that there were a significant number of jobs in the national economy available to Plaintiff. Tr. 40. Specifically, the VE identified the following occupations: small parts assembler, hand packager, and cannery worker Tr. 40, 76-84. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 36.

In this appeal, Plaintiff contends that the ALJ erred by improperly discounting his subjective symptom testimony, including claims that the ALJ impermissibly considered Plaintiff's lack of treatment, Plaintiff's daily activities, Plaintiff's past work experience, and the lack of evidence that Plaintiff's condition had worsened. Plaintiff also claims that the ALJ improperly rejected the lay witness testimony of Plaintiff's friends and relatives. Finally, Plaintiff also alleges that the ALJ erred in not resolving a conflict between the limitations in the RFC and the vocations the expert identified from the Dictionary of Occupation Titles (DOT).

I. **Subjective Symptom Testimony on Alleged Memory Deficits and Behavioral Issues**

Plaintiff's first claim is that the ALJ failed to provide the required "specific, clear and convincing evidence" to justify rejecting Plaintiff's allegations on his medically determinable impairments. Brief for Plaintiff (ECF 9) at p. 6. Here, the ALJ found that Plaintiff did suffer from the following severe impairments: history of traumatic brain injury (TBI), history of seizure disorder, neurocognitive disorder, anxiety, depression Tr. 30. However, in evaluating Plaintiff's claims on these impairments, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, [ ] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." Tr. 34.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the

4 – OPINION AND ORDER

claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*(citing *Treichler*, 775 F.3d at 1102). When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "An ALJ is not required to 'believe every allegation of disabling pain.'" *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021)(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Smartt*, 53 F.4th at 497-98

5 – OPINION AND ORDER

("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, the ALJ accepted that Plaintiff suffers from remote traumatic brain injury (TBI), poor memory, and seizures. Tr. 30, 87, 55-70. Plaintiff testified that his short-term memory was "really bad," and he attributed it to the accident in 2007 when the SUV he was in flipped over. Tr. 56. At the time he filled out the activity report, he stated he was able to do simple meal preparation, yard work, and cleaning. Tr. 60. He stated, however, that he was not able to do those things now. *Id*. He stated he still used public transportation but only if his partner accompanied him. Tr. 60-61. He also testified that he liked to go to the park and go swimming. Tr. 61. He also stated he and his partner would go to movies and eat out periodically. Tr. 61.

He also testified that he got distracted at work and needed "social queues (*sic*)" on a regular basis as a reminder to do things. Tr. 62. He also stated that without the social cues he could overeat. Tr. 62. He also stated that he does not feel safe when he is in an unfamiliar area; he becomes frustrated when he is lost, and one time he threw his phone in anger over the frustration. Tr. 62. He feels that his memory has "gotten worse" and will continue to decline. Tr. 63. He feels guilty over his wife's suicide and blames himself. Tr. 63. He also has a hard time stopping inappropriate behavior and has been fired from jobs because of this. Tr. 63-64. He has continued to go on interviews for jobs, but also believes he needs continuing support and ongoing care. Tr. 63-64. He also stated that he has a problem "understanding, remembering and applying information and interacting with and concentrating." Tr. 64. He believed these problems will continue to persist and affect his "maintenance to pace and keep on task." *Id*.

He also stated that his pain, diarrhea, heartburn, and headaches limit his ability to work and require frequent bathroom breaks. *Id.* He also states he often feels dizzy and feels like he is going to fall, and he attributes that to the traumatic brain injury and the medication. Tr. 64-65. He repeated that it is hard for him to understand, remember, and apply information; he also gets angry when people correct him. Tr. 65. He often loses things, blames others for it, and has caused physical harm to himself and damaged property, including punching in a car windshield. Tr. 65. He also stated that he has "trashed" his grandmother's home and has a hard time adapting or managing himself in situations he is not familiar with. Tr. 66.

He also believes he is easily influenced and could be taken advantage of easily. Tr. 66. He stated his behaviors have made it difficult for his relationship with his partner's daughters as they are often embarrassed by his behaviors. Tr. 67. He testified that he "thinks things in his head" that are not real and gets frustrated when told they are not real. Tr. 67. He also stated he forgets important dates and forgets appointments because he does not write them down. Tr. 67-69. He testified that he does not think he can take care of himself and remember his medical needs and appointments without a person around to take care of him. Tr. 69-70. He often has to have his partner talk on the phone for him when making appointments because his memory is poor. Tr. 70. He feels it's hard to deal with his depression, faulty memory and physical ailments. Tr. 70. He also stated he spends a lot of time in the bathroom for his diarrhea. Tr. 70. He also stated that he has to be reminded not to take too many Tums for his heartburn, and he often forgets the alarms that are set to remind him to take his medication. Tr. 70-71. He is also afraid of his seizures and how it will affect him. Tr. 71. The ALJ summarized Plaintiff's testimony as follows: "claimant alleged that he is unable to work due to a remote TBI, poor memory, and seizures [ ]. He reported being limited in memory, completing tasks,

7 – OPINION AND ORDER

concentration, understanding, and following instructions [ ]. His testimony indicated that he needed a high level of assistance with activities of daily living [and] also indicated that he has difficulty with managing his anger." Tr. 33.

The ALJ provided specific, clear, and convincing medical evidence that controverted Plaintiff and his witnesses' allegations. The record shows as follows:

As to Plaintiff's allegation that the TBI prevented him from working, the ALJ noted that the records showed that plaintiff did not stop working after his allegedly disabling condition. Tr. 34. Despite the injury as a high school teenager, he was subsequently able to complete high school and work full-time in various jobs. Tr. 34, 953-954. The ALJ noted in the records that Plaintiff reported being able to work fulltime in the past and getting along well with others at the job. Tr. 954. Plaintiff reported having logistics issues with working in one of his past jobs as a sandblaster Tr. 954. He later reported that sand blasting was his "dream job." Tr. 511. The ALJ noted that this "suggests [claimant] had non-medical reasons for not doing this work and he could have performed this work fulltime despite his impairments." Tr. 35.

With regard to Plaintiff's claim on the severity of his seizures, the ALJ noted that, while Plaintiff brain seizures in the past, the records showed that he had been free from brain seizures for several years until the they recommenced in 2018. Tr. 34, 650, 730, 732. Anti-seizure medication was prescribed in April of that year. Tr. 730. Plaintiff did not appear to be on any anti-seizure medication before that time. Tr. 730-763. He did not report another seizure until October 2018, but the record reflects that he had missed taking his medication prior to this seizure. Tr. 668. After 2019, he rarely, if ever, reported seizures to healthcare providers or sought treatment for seizures. Tr. 627-637, 937, 939. The ALJ concluded that "[t]he evidence of limited seizures after 2018 supports finding that the claimant's seizures would not prevent him

from maintaining reliable work productivity and attendance. This condition is further accounted for in the residual functional capacity by limiting the claimant's exposure to hazards." Tr. 34

The AL noted that there was "limited medical evidence" during the period from the alleged onset to the date of the last insured and that there was not a persuasive explanation for the lack of medical attention during the period. Tr. 34. With regard to extant records of treatment history, Plaintiff saw providers sporadically in 2015 for various transient medical conditions, such as neck and back pain, and he was seen for an upper respiratory infection. Tr. 765-70. However, the records indicate that Plaintiff did not see a healthcare provider from late 2015 to approximately April 2018. At that time, he stated that he had not seen a physician in 8-9 years. Tr. 761. From this evidence the ALJ concluded that he was "not persuaded that the gap in treatment from late 2015 to about April 2018 was due to reasons beyond the claimant's control, and the apparent lack of treatment during this period is at least somewhat inconsistent with the allegations of disabling physical and mental impairments." Tr. 34.

The ALJ credited Plaintiff's testimony that he had developed issues with anxiety and depression. Tr. 34. Plaintiff did suffer from depression and anxiety after his wife's death in 2018 (Tr. 684, 689, 954), he was prescribed appropriate medication. Tr. 684, 689. When he saw a social worker in May-June 2019 (after he started the medication), he did not report significant issues with anxiety or depression. Tr. 933, 941. However, the ALJ concluded that the "medical evidence shows little, if any, additional evaluation or treatment for depression and anxiety after mid-2019." Tr. 35. Plaintiff reported that he later took the psychiatric medication for only a short period and that his mood symptoms had improved. Tr. 953-954. Plaintiff did not seek any significant help for this anxiety or depression after mid-2019. Tr. 954-955. The ALJ concluded that "the limited treatment for anxiety and depression, suggests that the claimant's symptoms

9 – OPINION AND ORDER

from these conditions would not interfere with his ability to maintain productivity or attendance at a fulltime job." Tr. 35.

The ALJ also examined the evidence on Plaintiff's cognition and memory issues. Plaintiff received cognitive rehabilitation treatment from December 2018 to April 2019. Tr. 603-05, 920-22. In those sessions, he was noted to have impaired memory and decreased concentration, but he reported that treatment he received was somewhat helpful, and he developed somewhat effective strategies for mitigating his memory loss by keeping track of information in notebooks. Tr. 603-05, 920-22, 941. In a psychological examination in 2019, Plaintiff did not report significant or persistent difficulty with anxiety and depression to the psychologist. Tr. 952-68. When Plaintiff sought rehabilitation training in 2020, the training reports noted that he demonstrated an ability to work fulltime with job coaching and, once he learned and practiced job tasks, he could do them. Tr. 507, 512. Two state agency doctors in 2019 concluded that Plaintiff could work at the light exertional level with restrictions in postural activities and exposure to hazards. Tr. 87-103, 98. With regard to Plaintiff's brain injury, one doctor noted that Plaintiff showed few signs of neurological issues other than short term memory loss. Tr. 92-94. The report also noted that Plaintiff had tested "normal" in neurological examinations, and that Plaintiff did not report seizures during appointments in June and October of 2019. Tr. 134. Reports also noted that Plaintiff was very focused with testing and was able to persist in activities such as household chores. Tr. 960-961. Plaintiff also had average scores on an intelligence test, including an average score in working memory. Tr. 957, 962-963. The notes of an examining psychologist also indicated that Plaintiff could do simple routine work and tasks. Tr. 135, 963. From this evidence, the ALJ concluded that the claimant's cognitive disorder and other mental impairments would not prevent him from performing simple tasks at

jobs that do not require public contact. Tr. 35  The ALJ also concluded from the evidence that Plaintiff ability to perform tasks after learning them "strongly suggests he could learn tasks at a simple routine and repetitive jobs within 30 days, as required by unskilled work" without the need of  "a job coach or supported employment." Tr. 36.

The ALJ also noted that the medical records showed that Plaintiff's daily activities indicate he could operate independently.  In a March 2019 report, Plaintiff noted that he was living with his in-laws and helping them to do household chores.  Tr. 444.  He reported that he prepared simple meals and did house and yard work without assistance.  Tr. 443-44.  He reported that he can independently use public transportation and  shop in stores by himself.  Tr. 444-48, 960-61, 966.  Plaintiff  stated to medical providers that he could manage stress and changes in routine without difficulty.  Tr. 447.  He denied any problems with personal care and reported using a phone application to remind himself to take medications.  Tr. 443.  The ALJ concluded that he "is not persuaded that the claimant's activities of daily living are as limited as he alleged in his testimony, or that the claimant's impairments result in the degree of limitation that he testified to. Tr. 35.

As shown above, the ALJ's considered the entire record.  His detailed summary of the evidence in the record on memory issues and behavioral concerns is not a cherry-picked characterization of Plaintiff's physical and mental condition.  The ALJ agreed that Plaintiff had these severe impairments history of traumatic brain injury (TBI), history of seizure disorder, neurocognitive disorder, anxiety, depression.  Tr. 30.  However, despite those limitations, the ALJ examined the entire record and provided provide specific, clear, and convincing reasons to support the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

11 – OPINION AND ORDER

other evidence in the record . . . ." Tr. 34. The ALJ found that he "was not persuaded that the memory deficits and behavioral issues would completely preclude the claimant from working, as such a finding would be inconsistent with the claimant's ability to work fulltime in the past despite his cognitive disorder, the lack of evidence showing that the claimant's cognitive disorder worsened after the alleged onset date, the average scores on the 2019 intelligence test, his report of getting along well with others when working in the past, and the claimant's independence in activities such as house work, preparing simple meals, using public transportation, and shopping in stores." Tr. 37.

This court is "able to reasonably discern the ALJ's path," and that is all that is required of the ALJ. *See Despinis v. Comm'r Soc. Sec. Admin*., No. 2:16–cv–01373–HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (citation omitted). *Accord Lambert*, 980 F.3d at 1277 ("Our cases do not require ALJ's to perform a line-by-line exegesis of the claimant's testimony....").

Plaintiff also seeks to undermine the ALJ's determinations on his credibility by alleging defects in specific evidence relied upon the ALJ. As shown below, those claims are without merit.

    A.    <u>**Conservative Treatment**</u>

Plaintiff claims that the ALJ should not have considered Plaintiff's lack of treatment when assessing Plaintiff's credibility. He also claims that the ALJ erred by failing to consider why Plaintiff could not seek treatment, and by finding that Plaintiff could have sought treatment during the relevant time period even if Plaintiff was unemployed. Brief for Plaintiff (ECF 9) at pp. 9-11.

12 – OPINION AND ORDER

An unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. As the Ninth Circuit has noted: "We have previously indicated that evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)(*citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). Here, Plaintiff concedes that the record is accurate as to the history of what treatment Plaintiff sought (and did not seek) during the relevant period. He does not allege that there were instances of treatment in the record that the ALJ missed. Instead, Plaintiff asserts that the ALJ had an affirmative duty to question Plaintiff as to why he did not seek more treatment. Brief for Plaintiff (ECF 9) at 10-11. Plaintiff points to no case law or regulation that directly imposes an affirmative duty on an ALJ to make such in inquiry on the issue of lack of treatment. The record here is complete on the salient facts for disability analysis, i.e., what treatment was sought and what treatment was not sought in the relevant time period. As such, the ALJ had what was needed and did not have to engage in any additional colloquy. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001)("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Plaintiff makes a related argument that the ALJ improperly speculated on why Plaintiff did not seek treatment during the relevant time period. Brief for Plaintiff (ECF 9) at p. 10. The record contravenes this assertion. As noted above, the ALJ closely examined the history of treatment and/or nontreatment for the relevant disabilities. After considering this evidence in the

13 – OPINION AND ORDER

record the ALJ concluded that: "There is not a persuasive explanation for the lack of medical attention during the period." Tr. 34. The ALJ then went on to note that:

> If he lacked health insurance, he likely could have obtained coverage through a state Medicaid program. He also could have obtained at least some medical attention through community healthcare resources. Thus, the undersigned is not persuaded that the gap in treatment from late 2015 to about April 2018 was due to reasons beyond the claimant's control, and the apparent lack of treatment during this period is at least somewhat inconsistent with the allegations of disabling physical and mental impairments.

Tr. 34.

There is nothing improper here as an ALJ—like any fact-finder—may draw reasonable inferences from the evidence. "If the ALJ's findings are supported by inferences reasonably drawn from the record, they will be upheld." *Thomas v. Saul,* 796 F. App'x 923, 925 (9th Cir. 2019)(*citing Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).

For all these reasons, Plaintiff's claims here are rejected.[3]

### B.    Plaintiff's Daily Activities

Plaintiff claims that the ALJ erred by finding that Plaintiff's daily activities undermine his claim of disability. "An ALJ may also consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)(*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).

The ALJ provided an extensive analysis of the evidence in the record regarding Plaintiff's daily activities. The ALJ noted that the record showed that Plaintiff was capable of

---

[3] The court also finds that if there was error here, the error is harmless. This is so because, even if you exclude the issue of past treatment (but one factor in the credibility analysis) there was still substantial evidence to support the ALJ's finding on credibility and the nature of Plaintiff's limitations. "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion." *Adams v. Kijakazi*, No. 21-16413, 2023 WL 1879247, at *1 (9th Cir. Feb. 10, 2023)(*quoting Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)).

14 – OPINION AND ORDER

doing household chores and yard work, preparing simple meals, using public transportation, and shopping in stores by himself. Tr. 36, 443-448, 960-961, 966. Plaintiff also stated to medical providers that he could manage stress and changes in routine without difficulty, and he stated that he did not have any problems with personal care. Tr. 36, 447, 443. A neuropsychological evaluation in 2019 showed that he had average scores on an intelligence test, including an average score in working memory. Tr. 957. One of the examining psychologists also reported that the claimant could do simple routine work. Tr. 135, 963. Tests also noted that Plaintiff had a mildly slow pace, but he was very focused with testing and was able to persist at activities such as household chores. Tr. 961, 963. The evidence also showed that Plaintiff was able to work full-time in the past and the evidence shows no deterioration in his cognitive functioning since the alleged onset date. Tr. 953-54. From this evidence the ALJ concluded he "is not persuaded that the claimant's activities of daily living are as limited as he alleged in his testimony, or that the claimant's impairments result in the degree of limitation that he testified to." Tr. 36. Such evidence provides specific, clear, and convincing reasons for discounting Plaintiff's testimony.

Furthermore, any error here would be harmless because there is substantial other evidence that upholds the ALJ's findings on credibility and job limitations even if the daily living activities were excluded. *Adams*, No. 21-16413, 2023 WL 1879247, at *1; *Molina*, 674 F.3d 1115. [4]

---

[4] Plaintiff also claims that the ALJ erred in considering Plaintiff's past work experience, as well as a statement that Plaintiff considers one of his prior jobs his "dream job." Brief for Plaintiff (ECF 9) at pp. 14-17. The Court disagrees. An ALJ may take into consideration past work history. *See* 20 C.F.R. § 404.1560(b) and (b)(1). Moreover, in this case the ALJ noted that the vocational expert was "unable to determine the claimant's past relevant work . . . . [so] [f]or the purposes of issuing this decision, the undersigned elects to forgo the evaluation of the claimant's past relevant work" Tr. 39. Accordingly, the ALJ ruled in Plaintiff's favor and held that Plaintiff "is unable to perform any past relevant work," which would include the prior job as a sandblaster. Tr. 39. In addition, it was proper for the ALJ to consider the circumstances of the

15 – OPINION AND ORDER

## II.     The ALJ Properly Rejected the Lay Witness Testimony

The ALJ also considered the lay witness testimony in the form of written statements from Heather H. (Plaintiff's girlfriend/representative), Casi H. (Plaintiff's sister), Haley H.(the daughter of Plaintiff's girlfriend), and Jade B. (Plaintiff's daughter). Tr. 582-589. Their testimony tracked Plaintiff's regarding his physical and mental limitations, his poor memory and inappropriate behavior. Tr. 582-589.

It is axiomatic that lay witness testimony is "competent evidence that the ALJ must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). An ALJ can reject such evidence by providing "germane reasons" for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

However, failure to provide a reason for discounting lay witness testimony is harmless where "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the witness's claims." *Molina*, 674 F.3d at 1122 (9th Cir. 2012) (*superseded on other grounds by* 20 C.F.R. § 404.1502(a)). As the lay testimony generally described the same limitations alleged by Plaintiff, and as the ALJ did not err in rejecting Plaintiff's own testimony as to the extent of the severity of his ailments and his limitations, any error in not addressing the lay testimony of Plaintiff's friends and relatives is harmless.

---

sandblasting job and that Plaintiff voluntarily left that job for non-medical reasons. As the ALJ noted: "this suggests he had non-medical reasons for not doing this work and he could have performed this work fulltime despite his impairments." Tr. 30. The ALJ did not err in making what appears to be a reasonable inference based upon the evidence in the record. Plaintiff cites to no authority suggesting an ALJ cannot use the evidence of Plaintiff's past work history, including his departure from a job for nonmedical reasons, in assessing Plaintiff's claims. *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984)("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record).

16 – OPINION AND ORDER

### III. <u>Supervision</u>

Plaintiff also objects to the fact that the ALJ did not include a limitation in the RFC that Plaintiff could only work in jobs that require intense supervision. Specifically, Plaintiff claims that the ALJ should have held that Plaintiff has an inability to perform "in a competitive work environment on a regular and continuing basis without additional supervision to keep him on task." Brief for Plaintiff (ECF 9) at p. 12. While Plaintiff points to the evidence that could favor imposing such a condition, he ignores the substantial evidence that demonstrates that a condition of supervision was not necessary. The ALJ found as follows:

> The undersigned is not persuaded that the claimant requires a job coach or would otherwise need supported employment. As noted above, the claimant worked fulltime after his injury in the past and he did not stop working due to his cognitive disorder or other impairments before the alleged onset of disability and the evidence does not show a significant deterioration in functioning since the alleged onset date. [Tr. 953-54, 87, 604, 953-954.] Moreover, as noted by the vocational rehabilitation providers the claimant was able to perform tasks after learning how to do them [Tr. 512.], which strongly suggests he could learn tasks at a simple routine and repetitive jobs within 30 days, as required by unskilled work (18E/7). As noted above, the vocational rehabilitation notes also indicated that the claimant had difficulty interacting with the public when working as a landscaper (18E/48, 63, 65). [Tr. 503, 568, 570.]The undersigned considered this in limiting the claimant to work that does not require public contact. It seems that he could likely sustain simple routine repetitive tasks on a fulltime basis at a job where he was not distracted by the public. Thus, if the claimant worked in a job with no public contact, he would likely not require a job coach to keep him on task.

Tr. 36.

Here, there was substantial evidence to support the ALJ's decision to not include a job coach or close supervision as a limitation in the RFC. Under these circumstances, this Court may not second-guess the ALJ. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Kushlan v. Kijakazi,* No. 22-35121, 2022 WL 16958621, at *1 (9th Cir. Nov. 16, 2022) (*quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Moreover, the court also find in this instance that, if there was that

17 – OPINION AND ORDER

any error, such error is harmless as substantial other evidence support the ALJ's rejection of Plaintiff's testimony. *Adams*, No. 21-16413, 2023 WL 1879247, at *1; *Molina*, 674 F.3d 1115.[5]

### IV. There was no Conflict in the Testimony of the Vocational Expert that Needed to Be Resolved by the ALJ

Lastly, Plaintiff argues there was a conflict between the limitations in the RFC and the DOT vocations that the VE testified Plaintiff could perform. The VE testified that, even considering Plaintiff's limitations, he still would be able to perform the requirements of representative occupations such as a small parts hand packager, and cannery worker. Tr 40, 78-79. As noted at the hearing, all these jobs required a Reasoning Level (RL) of Two. Tr. 40, 78-79.[6] Plaintiff argues the RFC's limitation of "simple, routine tasks" necessarily limits Plaintiff to jobs that requires no more than an RL of 1[7].

---

[5] Plaintiff also claims that the ALJ erred in concluding that the there was no evidence that Plaintiff's condition had worsened during the relevant time frame. Plaintiff claims this conclusion is based on conjecture. Brief for Plaintiff (ECF 9) at pp. 7-9. In fact, however, there is nothing in the record to show that Plaintiff's conditions had worsened. Tr. 87, 604, 953-954. It is proper to infer from that fact (the absence of evidence) that the condition had not worsened and equally proper to use that fact in both setting the RFC and assessing Plaintiff's claims about his current condition.

[6] According to the relevant SSA regulations, a Reasoning Level 2 requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." In contrast, a Reasoning Level 1 limits an employee to jobs that only require an employee to "[a]pply commonsense understanding to carry out simple one or two step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."

[7] "The Commission relies on the DOT as primary source of reliable job information regarding jobs that exist in the national economy. The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, "aspects of education (formal and informal) ... required of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least

Cases from this Circuit and this District undermine this argument. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)("simple, routine, or repetitive work" was consistent with RL 2 occupations. *See also Patton v. Astrue*, No. 6:11-CV-06423-ST, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013)(a claimant who is limited to "simple, routine tasks and instructions" is capable of performing a job requiring Level Two reasoning.").[8]

In sum, the RFC crafted by the ALJ in this case sets out the same type of limitations which the Ninth Circuit has agreed justifies work involving an RL of 2. Accordingly, there is no inconsistency to be resolved here.[9]

---

reasoning ability) to Level 6 (which requires the most*).*" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

[8] Other cases cited by Plaintiff also undermine his argument. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)("an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning.'" *Id*. at 1004 n. 6 (collecting cases). *Davis v. Saul*, 846 F. App'x 464, 465 (9th Cir. 2021)(finding that claimant could "perform light work" involving "simple tasks typical of unskilled occupations" with "no production rate pace work," "simple and some 3–4 step tasks," and only "occasional interaction with coworkers, and no interaction with the public;" no error by ALJ in relying on the VE's testimony which identified six suitable occupations. All but one of those jobs require Reasoning Level 2).

[9] To the extent there was any error in the ALJ not further questioning the VE, this court finds the error harmless because the record amply supports the RFC determination, amply supports the limitations placed in the RFC, and amply supports the conclusion that Plaintiff can perform jobs requiring an RL of 2, and, specifically, he could perform the jobs listed by the VE. "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion." *Adams,* No. 21-16413, 2023 WL 1879247, at *1 (9th Cir. Feb. 10, 2023)(internal quotation marks and citation omitted); *Tommasetti*, 533 F.3d at 1038 ("[T]he court will not reverse the decision of the ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotation marks and citation omitted).

19 – OPINION AND ORDER

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

       DATED this 15th day of August 2023

                              /s/ Michael J. McShane_____
                              Michael McShane
                              United States District Judge